UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE CO., a Nebraska Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>REDLAND INSURANCE COMPANY, a New Jersey Corporation, OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, a North Carolina Corporation, and DOES 1 to 10,<br><br>        Defendants. | 3:13-CV-00144-LRH-VPC<br><br>ORDER |

Before the Court is Defendants Redland Insurance Company ("Redland") and Occidental Fire & Casualty Company of North Carolina's ("Occidental") (collectively "Defendants") Motion for Summary Judgment. Doc. #20.[1] Plaintiff National Fire & Marine Insurance Co. ("National Fire") filed a Response (Doc. #22), to which Defendants replied (Doc. #23).

**I.      Factual Background**

This case concerns an insurance coverage dispute between National Fire and Defendants regarding National Fire's alleged right to equitable contribution from Defendants for the defense fees and costs it incurred on behalf of Edward B. Campau, d.b.a. Southwest Carpentry ("Southwest Carpentry") in a lawsuit entitled *Albanese v. Centex Homes, et al.*, Washoe County Court Case No.

---

[1] Refers to the Court's docket number.

1  CV-07-02374 (the "Underlying Action"). National Fire alleges that Defendants also had a duty to
2  defend Southwest Carpentry in the Underlying Action and, therefore, must share on a pro rata basis
3  the $513,216.24 defense expenses.

4        The Underlying Action involves claims for property damage arising out of construction
5  defects to multiple homes in the Turtle Creek subdivision in Stead, Nevada. Doc. #1, ¶14; Doc.
6  #20, p. 6. Centex Homes was the developer and general contractor for the Turtle Creek residential
7  subdivision. *Id.* On August 1, 2001, Centex Homes retained Southwest Carpentry to provide
8  framing services for the first phase of development. Doc. #1, ¶14; Doc. #20, Ex. 1. At the time,
9  Southwest Carpentry was insured with Redland pursuant to a commercial liability policy effective
10 January 1, 2001 to January 1, 2002. Doc. #1, ¶10; Doc. #20, Ex. 2. From January 1, 2002 to
11 January 1, 2003, Southwest Carpentry was insured with Occidental under a similar commercial
12 liability policy. Doc. #1, ¶11; Doc. #20, Ex. 4. Both Redland's and Occidental's policies contain
13 the same coverage limitations:

14    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance policy applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance policy does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period.

23 Doc. #20, Ex. 2; Doc. #20, Ex. 4. "Property damage" is defined as:

24    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

26 ///

2

   b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

  Following the expiration of Occidental's insurance policy, Southwest Carpentry was insured under a commercial liability policy issued by Underwriter's at Lloyd's of London and effective January 15, 2003 through October 23, 2003.  Doc. #20, Ex. 5.  That insurance carrier is not a party to this contribution action.  On September 10, 2003, Centex Homes and Southwest Carpentry entered into a second subcontracting agreement, pursuant to which Southwest Carpentry was to continue providing framing services for the construction of the second phase of homes at Turtle Creek.  Doc. #20, Ex. 6.  From October 23, 2003 to October 23, 2004, Southwest Carpentry was insured under a commercial liability policy issued by National Fire.  Doc. #1, ¶9; Doc. #20, p. 8.  Thereafter, National Fire provided coverage to Southwest Carpentry for an additional year under the same policy.  *Id.*

  It is undisputed that some of the Turtle Creek homes were completed during the Redland and Occidental policies and some homes were completed after the expiration of the Redland and Occidental policies.  Doc. #20, Ex. 3; Doc. #22, pp. 5-6.  The final home in the Underlying Action was completed on or about May 28, 2004.  Doc. #20, Ex. 3.  On May 16, 2006, Architecture & Construction Forensics ("ACF") issued a Preliminary Defect List for the Turtle Creek residential development.[2]  Doc. #20, Ex. 7.  On October 16, 2007, the Turtle Creek homeowners filed suit against Centex Homes, alleging claims for negligence, negligence per se, breach of contract, and strict liability.  Doc. #22, Ex. A.  On March 27, 2008, Centex Homes filed a Third-Party Complaint against Southwest Carpentry and other subcontractors asserting causes of action for negligence, express contractual indemnity, equitable indemnity, implied contractual indemnity, breach of

---

[2] The Preliminary Defect List was revised on December 31, 2006.  *Id.*

3

1  express and implied warranties, breach of written contract to indemnify, and breach of written
2  contract to defend.  Doc. #22, Ex. B.

3  Southwest Carpentry tendered its defense to insurance carriers Redland, Occidental, Lloyd's
4  of London, and National Fire.  On December 3, 2007, Redland and Occidental denied coverage,
5  asserting that the claims did not come within the terms and conditions of their respective policies.[3]
6  Doc. #20, Ex. 9.  Specifically, Redland and Occidental denied coverage because the respective
7  policies required "an occurrence resulting in property damage during the policy period" for the
8  policies to apply.  *Id.*  On March 9, 2007, National Fire accepted Southwest Carpentry's tender of
9  defense under its 2003-2004 policy (Doc. #20, Ex. 11), but denied coverage under it's 2004-2005
10 policy (Doc. #20, Ex. 10).  Only National Fire participated in the defense of Southwest Carpentry
11 until it reached a partial settlement with the homeowner plaintiffs and third-party Centex Homes.
12 Doc. #22, Grandgenett Decl., ¶9.  National Fire spent $513,216.24 in defense expenses.  *Id.*  On
13 March 22, 2013, National Fire filed the present Complaint seeking equitable contribution from
14 Defendants for the defense expenses that it incurred in defending Southwest Carpentry in the
15 Underlying Action.

16 **II.  Legal Standard**

17 Summary judgment is appropriate only when the pleadings, depositions, answers to
18 interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record
19 show that "there is no genuine issue as to any material fact and the movant is entitled to judgment
20 as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the
21 evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the
22 light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*
23 *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154
24 (9th Cir. 2001).

---

[3] Lloyd's of London also denied coverage on December 26, 2006.  Doc. #20, Ex. 8.

4

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). On an issue as to which the non-moving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III. Discussion**

Here, Defendants contend that they had no duty or obligation to defend Southwest Carpentry in the Underlying Action and, thus, may not be held liable for equitable contribution for the defense expenses incurred by National Fire in defending Southwest Carpentry. Under Nevada law, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)). "If there

5

is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.* (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988). "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint [in the underlying action] with the terms of the policy." *Id.* (citing *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990)). Thus, an insurer may only deny coverage when, based on the facts pled in the complaint, there is no potential for arguable or possible coverage under the policy. *Id.*

An insurance policy "is enforced according to its terms to effectuate the parties' intent," *Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991), and "is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense," *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (Nev. 1984)). Any limitation in policy coverage must "clearly and distinctly communicate[ ] to the insured the nature of the limitation." *Reno's Executive Air*, 382 P.2d at 1382. Where a limitation lacks clarity, "ambiguities are to be resolved in favor of the insured." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003) (internal citations omitted).

Here, the Court finds that the limitations in Redland and Occidental's respective policies were clearly and distinctly communicated to Southwest Carpentry. Relevantly, the policies require that "property damage" occur during the policy period in order to trigger coverage. *See* Doc. #20, Ex. 2; Doc. #20, Ex. 4. In *United National Insurance*, the Nevada Supreme Court addressed a similar policy limitation. 99 P.3d 1153. The action between insurers for contribution arose out of a negligence claim against the insured subcontractor for property damaged caused by the collapse of the Las Vegas Hilton marquee sign in July of 1994. *Id.* at 1154-56. Plaintiff insurer defended the insured, but defendant insurer denied coverage asserting that the "property damage" did not occur during the policy period. *Id.* The court concluded that defendant insurer did not have a duty to defend the insured because the underlying negligence complaint "only alleged that the sign suffered

6

physical, tangible injury when it collapsed on July 18, 1994, nearly three months after [their] policy expired." *Id.* at 1159. The court reasoned that regardless of when the allegedly negligent and defective work was done on the sign, it did not experience property damage until it was "altered in appearance, shape, color or in other material dimensions." *Id.* (citing with approval *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001)).

Indeed, the timing of a construction defect does not necessarily correlate with the timing of the property damage. The construction defects, which must have existed at the time the projects were completed,[4] ultimately gave rise to the property damage at issue in the Underlying Action. However, the fact that some residences were completed during the relevant policy periods is not sufficient to impose a duty to defend. Similarly, the fact that Southwest Carpentry may have constructed the residences negligently or in a defective manner during the relevant policy periods is not sufficient to impose a duty to defend. Rather, the duty to defend is only triggered when there is an "occurrence" or a physical manifestation of "property damage" during the relevant policy period.

While *United National Insurance* is instructive, Defendants' reliance thereon is misplaced. There, the date on which the property damage caused by the collapse of the Las Vegas Hilton marquee occurred was fixed and specifically alleged in the underlying complaint. Because the property damage could not have occurred prior to that date (i.e., during the relevant policy period), there was no possibility that defendant insurer would have had a duty to defend the insured. In contrast here, the complaint in the Underlying Action (the "Underlying Complaint") does not allege that the property damage occurred at any particular time.[5] Moreover, there is nothing in the Underlying Complaint that affirmatively forecloses the possibility that the property damage

---

[4] Indeed, it is axiomatic that negligent or defective construction cannot occur after construction is complete.

[5] The Underlying Complaint is not plead with any particular specificity, thereby lending itself to various plausible interpretations. As the court noted in *United National Insurance v. Assurance Company of America*, "this further supports the Court's conclusions as unspecific allegations are more likely to create a situation where coverage exists that is not immediately obvious." No. 2:10-cv-01086-MDD-RJJ, 2012 WL 1931521, at *3 n. 1 (D. Nev. May 29, 2012).

occurred during the relevant policy periods. Instead, it merely alleges that the homeowner plaintiffs "have suffered and continue to suffer damages proximately caused by defects and deficiencies in the construction of [their] residences." Doc. #22, Ex. A, ¶¶18, 24, 32. Because the date on which the property damage occurred is not ascertainable from the Underlying Complaint, the Court cannot conclude that there was no potential for arguable or possible coverage under the policies as the court did in *United National Insurance*.

Moreover, contrary to Defendants' assertion that the first indication of "property damage" to the homes at Turtle Creek arose in 2006 when the Preliminary Defect List was issued, the date on which the property damage occurred is not ascertainable from that report, or any other extrinsic evidence before the Court at this time.[6] The timing of the forensic investigation, which identified the construction defects giving rise to the property damage at issue in the Underlying Action, does not necessarily correlate with the timing of the property damage. Moreover, the Preliminary Defect List issued by ACU in 2006 does not make any representations as to when the property damage first occurred. As such, the Preliminary Defect List does not establish that there was no potential for arguable or possible coverage under Defendants' policies.

Finally, whether the property damage was in fact "discovered" during or after Defendants' policy coverage periods is irrelevant at this juncture. Indeed, the date on which a homeowner

---

[6] Defendants argument that an insurer may rely on facts beyond the underlying complaint in determining whether it has a duty to defend is well taken, but nevertheless unavailing. Although the Nevada Supreme Court did not address this precise issue in *United National Insurance*, it did not foreclose the possibility that facts beyond the underlying complaint may be considered in a determination concerning coverage. *See United Nat'l Ins.*, 99 P.3d at 1158 ("an insurer bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy"). Moreover, other jurisdictions following the complaint rule have recognized an exception where one insurer has provided a defense and seeks to recover defense costs from another insurer. *See OneBeacon Ins. Co. v. Probuilders Specialty Ins. Co.*, No. 3:09-cv-00036-ECR-RAM, 2009 WL 2407705, at *8 n. 4 (D. Nev. Aug. 3, 2009) (citing *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1145 (10th Cir. 2008)). In these circumstances, the latter may rely on facts outside of the underlying complaint to show that the incident resulting in liability was not covered under its insurance policy. *Id.*

discovers the damage does not necessarily correlate with the date on which the damage occurred.[7] Under Defendants' policies, the duty to defend is triggered by the occurrence of property damage, not the discovery of property damage. Accordingly, the fact that the homeowner plaintiffs allege that they discovered the defects in construction and the damage caused thereby within three years immediately preceding the filing of the Underlying Complaint (i.e., after October 16, 2004) is of no moment. *See* Doc. #22, Ex. A, ¶44.

In sum, the Court finds that the date on which the property damage occurred (i.e., whether the property damage occurred during the relevant policy periods) remains a disputed issue of material fact. Defendants' policies provide that an occurrence of property damage includes "continuous or repeated exposure to substantially the same harmful conditions." Doc. #20, Ex. 2; Doc. #20, Ex. 4. Thus, it is conceivable that the property damage caused by the construction defects occurred at any point in time after construction. Neither the Underlying Complaint, nor any other evidence before the Court at this time, foreclose the possibility that the property damage occurred during the relevant policy periods and, thus, the possibility that Defendants had a duty to defend Southwest Carpentry in the Underlying Action. Accordingly, summary judgment is not warranted.

IT IS THEREFORE ORDERED Defendants' Motion for Summary Judgment (Doc. #20) is DENIED.

IT IS SO ORDERED.

DATED this 4th day of August, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[7] Defendants cite *Jackson v. State Farm Fire and Casualty Co.* for the proposition that a manifestation of property damage is "that point in time when appreciable damage occurs and is or should be known to the insured." 835 P.2d 786, 790 (Nev. 1992). However, the Nevada Supreme Court went on to deny summary judgment, stating that the date on which the insured discovered the property damage did not necessarily "constitute" the manifestation date. *Id.*